**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSEPH WATKINS,** | : | **CIVIL NO. 1:06-CV-1298** |
| **Plaintiff,** | : | |
| | : | **(Chief Judge Kane)** |
| **v.** | : | |
| | : | |
| **SENIOR OFFICER BIXLER,** | : | |
| **Defendant** | : | |

**MEMORANDUM**

On June 30, 2006, Plaintiff Joseph Watkins filed a combined <u>Bivens</u>[1] and Federal Tort

Claims Act ("FTCA"), 28 U.S.C. § 2672 <u>et</u> <u>seq.</u>, action naming Officer Bixler as the sole defendant.

(Doc. Nos. 1, 7, 17.)  The United States was later added as a Defendant.  (Doc. No. 19.)  Before the

Court is Defendants' motion to dismiss and for summary judgment.  (Doc. No. 21.)  For the reasons

discussed below, the motion to dismiss will be granted in part and denied in part and the summary

judgment motion will be granted.

**I.    MOTION TO DISMISS**

    **A.    Standard of review**

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a claim that fails to assert

a basis upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In the context of a motion to

dismiss under Rule 12(b)(6), the court must accept as true all of the factual allegations in the

complaint and all reasonable inferences that can be drawn therefrom.  <u>Langford v. City of Atlantic</u>

<u>City</u>, 235 F.3d 845, 847 (3d Cir. 2000) (citing <u>Nami v. Fauver</u>, 82 F.3d 63, 65 (3d Cir. 1996)).

Although the court is generally limited in its review to the facts alleged in the complaint, it "may also

consider matters of public record, orders, exhibits attached to the complaint and items appearing in

---

[1] <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388
(1971).

the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (stating that, although a district court ruling on a motion to dismiss may not generally consider matters extraneous to the pleadings, a "document integral to or explicitly relied upon in the complaint" may be considered "without converting the motion [to dismiss] into one for summary judgment") (emphasis omitted) (quoting Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1224 (1st Cir. 1996)).

Although the moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2007), the plaintiff has an obligation to allege facts sufficient to "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (internal citations omitted); see also Kost, 1 F.3d at 183 (A plaintiff must "set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that those elements exist.") (citation omitted).  Furthermore, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 127 S. Ct. at 1960.  When evaluating a motion to dismiss, a court need not "credit a complaint's 'bald assertions' or 'legal conclusions.'" Evancho v. Fisher, 423 F.3d 347, 354-55 (3d Cir. 2005).  Finally, when a plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face," Twombly, 127 S. Ct. at 1960, the complaint should be dismissed.

**B.      Allegations of the Complaint**

1.      Constitutional Claims

Plaintiff alleges that on March 9, 2005, Defendant Bixler used excessive force in kicking him

to the ground while he was handcuffed behind his back.  (Doc. No. 1, at 2.)  He states that he

received serious injuries to his lower back and the upper right side of his face.  (Id.)  He alleges that

this conduct was in violation of his Eighth Amendment right to be free from cruel and unusual

punishment.  (Doc. No. 1, at 4.)  He also contends that he was denied adequate medical care in

violation of the Eighth Amendment.  (Doc. No. 1, at 4.)

   2. <u>FTCA</u>

  As a result of the above incident, Plaintiff filed an administrative tort claim.  (Doc. No. 1,

at 2.)  On January 31, 2006, the claim was denied for the following reasons:

> After careful review of this claim, I have decided not to offer a
> settlement.  Investigation reveals you were in an unauthorized
> housing unit on March 9, 2005.  You were instructed by staff you
> were not authorized to be there.  You became loud, disruptive and
> insolent with staff.  You were escorted out of the unit by two staff
> members. Hand restraints were applied.  During escort to the Special
> Housing Unit (SHU), you attempted to pull away from staff.  You
> were taken to the ground, in order for staff to gain control of the
> situation. You were assisted to your feet and taken to Health Services
> for examination.  While in Health Services, you continued to be
> disruptive during medical evaluation.  Review of the record indicates
> staff reacted appropriately to your misconduct.  There is no evidence
> to suggest negligence on the part of any Bureau of Prisons' employee
> resulted in your alleged injury.

(Doc. No. 1-2, at 1.)  Plaintiff commenced the instant action on June 30, 2006, naming Bixler as the

sole defendant.  Thereafter, he sought permission *via* a motion to amend to add the United States as

a defendant.  Permission was granted and the United States Marshal's Service was directed to serve

the amended complaint on the United States.  (Doc. No. 19.)  The United States was served with the

amended complaint on October 25, 2006.  (Doc. No. 22, at 1.)

C.      **Discussion**

1.      Constitutional Claims

a.      *Excessive Use of Force*

Defendant first argues that "Watkins fails to state an Eighth Amendment claim of excessive use of force." (Doc. No. 26, at 11.)  In an excessive force claim, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992).  To determine whether force was used in "good faith" or "maliciously and sadistically," courts have identified several factors, including: (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of injury inflicted"; (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them"; and (5) "any efforts made to temper the severity of a forceful response." Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986)).

Significantly, not all tortious conduct which occurs in prison rises to the level of an Eighth Amendment violation.  See Howell v. Cataldi, 464 F.2d 272, 277 (3d Cir. 1972); Ostrander v. Horn, 145 F. Supp. 2d 614, 618 (M.D. Pa. 2001) ("Not every push or shove, even if it may later seem unnecessary in the peace of the judge's chambers, violates a prisoner's constitutional rights.") (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)).  Indeed, "[t]he Eighth Amendment's prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition *de minimus* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" Hudson, 503 U.S. at 9-10 (quoting Whitley, 475

4

U.S. at 327).

Here, Plaintiff alleges that Defendant Bixler assaulted him without provocation by knocking him to the ground and kicking him while he was restrained by handcuffs. Further, Plaintiff asserts that he sustained injuries to his back and the upper left side of his face. In accepting these allegations as true, and in drawing all reasonable inferences in favor of Plaintiff, it is clear that Plaintiff has asserted facts sufficient to suggest that Defendant Bixler's application of force was malicious and sadistic and was intended to cause Plaintiff pain. Accordingly, despite Defendant's argument to the contrary (Doc. No. 26, at 11), Plaintiff has set forth facts sufficient to state an Eighth Amendment claim of excessive use of force.

Defendant Bixler also argues that he is immune from suit inasmuch as he has been sued in his official capacity. (Doc. No. 26, at 17.) The Court agrees. The doctrine of sovereign immunity precludes a plaintiff from bringing a Bivens action against a federal agency. See FDIC v. Meyer, 510 U.S. 471, 484-86 (1994). Suits brought against federal officials in their official capacities are to be treated as suits against the employing government agency. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citing Brandon v. Holt, 469 U.S. 464, 471 (1985)). As a result, a Bivens suit brought against an individual federal official acting in his official capacity is barred by the doctrine of sovereign immunity, see Meyer, 510 U.S. at 484, and the Court lacks jurisdiction to hear the claim, see Kabakjian v. United States, 267 F.3d 208, 211 (3d Cir. 2001) (holding that district courts lack jurisdiction to hear claims brought against the United States unless Congress has explicitly waived sovereign immunity). In the instant case, to the extent that Plaintiff seeks to impose liability on Defendant Bixler in his official capacity as an employee of the Federal Bureau of Prisons, the claim is barred by the doctrine of sovereign immunity.

5

b.      *Denial of adequate medical treatment*

To demonstrate a prima facie case of Eighth Amendment cruel and unusual punishment based on the denial of medical care, a plaintiff must establish that defendants acted "with deliberate indifference to his or her serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976); see also Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993).   There are two components to this standard: "First, a plaintiff must make an 'objective' showing that the deprivation was 'sufficiently serious,' or that the result of the defendant's denial was sufficiently serious." Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir. 2002).   Additionally, the plaintiff must make a "subjective" showing that defendant acted with "a sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991); see also Montgomery, 294 F.3d at 499.

Further, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs. . . .   Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted).  Each defendant must have been personally involved in the events or occurrences which underlie a claim.  See Atkinson v. Taylor, 316 F.3d 257 (3d Cir. 2003); see also Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976).

Plaintiff fails to allege that Defendant Bixler was involved in, unreasonably delayed, or otherwise interfered with Plaintiff's medical treatment.  Consequently, this claim will be dismissed.

2.      FTCA

Title 28 U.S.C. § 2401(b) provides that "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by

certified or registered mail, of notice of final denial of the claim by the agency to which it was presented."  Defendants seek dismissal of the FTCA claim on the grounds that Plaintiff failed to satisfy the requirements of 28 U.S.C. § 2401(b). (Doc. No. 26, at 17.)  In support of this argument, Defendant explains that "[a]lthough Watkins filed his original complaint on June 30, 2006, within the statute of limitations period, he did not name the United States as a defendant until the Second Amended complaint, which was signed on August 29, 2006 and filed on September 5, 2005 [sic]." (Doc. No. 26, at 19.)  Because Plaintiff failed to file a timely complaint against the United States, the Government argues that the claim should be dismissed as barred by the applicable statute of limitations.

As noted above, Plaintiff initially filed the complaint on June 30, 2006, against Defendant Bixler claiming jurisdiction under the FTCA, 28 U.S.C. § 1346(b).  However, as a matter of law, only the United States is a proper defendant under 28 U.S.C. § 1346.  See Continental Ins. Co. of N.J. v. United States, 335 F. Supp. 2d 532, 535 (D.N.J. 2004).  Therefore, on September 5, 2006, Plaintiff moved to amend the complaint to substitute the United States as the proper FTCA defendant.

Subsection c of Rule 15 of the Federal Rules of Civil Procedure provides for relation back of amendments to the date of filing to prevent statute of limitation issues.  Specifically, "[a]n amendment of a pleading relates back to the date of the original pleading when . . . (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the

merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party." Fed. R. Civ. P. 15(c). The section further provides that subsection(c)(3) is satisfied for purposes of substituting the United States as a defendant if delivery or mailing of process is made on, among others, the United States Attorney General.

The record reflects that after filing the original complaint, summons was issued to Defendant Bixler, the United States Attorney, and the United States Attorney General.   (Doc. No. 16.) Plaintiff's action reasonably put the United States on notice that, but for a mistake in identifying Officer Bixler as the defendant, it would have been sued.  See Fed. R. Civ. P. 15(c)(3).  Moreover, the language of Rule 15(c) expressly provides that notice to the United States Attorney General satisfies all of the amendment requirements of subsection (c)(3).   See id.   In light of the circumstances and the United States Attorney General's notice of the claim, dismissal of Plaintiff's claim on statute of limitations grounds would be inappropriate and unnecessarily harsh.  See Williams v. Army & Air Force Exchange Serv., 830 F.2d 27, 30  n. 1 (3d Cir.1987) (holding it is an "irrefutable presumption" that if the Attorney General receives notice within statutory period, no prejudice results to the United States in allowing amendment) (citing Edwards v. United States, 755 F.2d 1155, 1158 (5th Cir.1985)).  Accordingly, the motion to dismiss the FTCA claim on statute of limitations grounds will be denied.

## II.      SUMMARY JUDGMENT MOTION

### A.      Standard of Review

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

8

any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988). A factual dispute is material if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 249. The evidence presented must be viewed in the light most favorable to the non-moving party. Id. The inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law. Id. at 251-52.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Childers v. Joseph, 842 F.2d 689, 694 (3d Cir. 1988). Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, the nonmoving party may not simply sit back and rest on the allegations in the complaint. Instead, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (internal quotations omitted). The evidence must be viewed in the light most favorable to the nonmovant. See Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." Celotex, 477 U.S. at 322.

With respect to the sufficiency of the evidence that the nonmoving party must provide, a

court should grant summary judgment where the nonmovant's evidence is merely colorable, conclusory or speculative. <u>Anderson</u>, 477 U.S. at 249-50. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. <u>Id.</u> at 252; <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).

**B.     Statement of Facts**

On March 9, 2005, while housed at the Federal Correctional Institution at Schuylkill, Minersville, Pennsylvania, Plaintiff was charged with the prohibited acts of Threatening Another with Bodily Harm, Insolence, and Being in an Unauthorized Area, in violation of Bureau of Prison Codes 203, 312, and 306. (Doc. 26-2, at 9). The Unit Secretary, who authored the incident report, described the incident as follows:

> On 03-09-2005, at approximately 1:00 p.m., I observed inmate Watkins attempting to cross into Unit 2B from the center unit team office areas. I stopped inmate Watkins and told him he is not permitted to go to Unit 2B. Watkins became loud and said he didn't care if I wrote an incident report. During the 1:30 p.m. move, I was in the Unit 2B Officer's office, when I observed inmate Watkins enter Unit 2B. I asked Watkins what he was doing in unit 2B when I just finished telling him he was not authorized to be there. Watkins got very loud, and said he didn't cross thru the middle, and he was allowed to come into Unit 2B. Several inmates drew closer to observe this incident, as Watkins was yelling at me. I told him he was still not allowed to be in Unit 2B when he lived in Unit 2A. Watkins told me to "do whatever you have to do, I don't care if you write an incident report" in a very loud voice. As he was arguing, his tone of voice consistently grew louder and I could see by his gestures his behavior was escalating and I feared something would happen, so I told him to leave the unit. Throughout this incident Watkins had invaded my personal body space and was standing approximately 4-5 inches from my face. I felt threatened by his actions during his incident and I believed he was going to strike me.

(Incident Report, Doc. 26-2, at 9.) In the course of the investigation, it was also discovered that this

altercation was witnessed by a Senior Officer on the unit and a Case Manager.  (Doc. 26-2, at 7-9.)

Plaintiff concedes that he had "an altercation" with the Unit Secretary. (Doc. 31, at 3.)  Following

this exchange, Defendant Bixler was ordered to assist Lieutenant Broe in escorting Plaintiff from

Unit 2 to the Special Housing Unit ("SHU").  (Deposition of Reginald Bixler ("Bixler Dep."), Doc.

26-2, at 4 ¶ 4.)  Defendant Bixler states as follows:

> I applied hand restraints to Watkins, and I began to escort Watkins
> out of the unit.  Watkins was in a highly agitated state.  As we exited
> Unit 2, Watkins broke free from the grip I had on his left elbow.  I
> grabbed Watkins by the left elbow and we went to the ground.
> Watkins landed on his back.  Lt. Broe and I helped Inmate Watkins
> to return to his fee, and then we escorted him to the health services
> unit.

(Id. at 4 ¶ 5.)  Lieutenant Broe described the incident in the following manner:

> On March 9, 2005, at approximately 2:10 PM Inmate Watkins,
> Joseph Reg, No. 36526-118 was escorted outside of the 2A unit to be
> escorted to the Special Housing Unit.  Upon entering the sally port
> area Inmate Watkins began arguing with both myself and Officer
> Bixler.  Inmate Watkins was escorted out of the unit and hand
> restraints were placed on the inmate and the inmate began to be
> escorted to the special housing unit.  The inmate began to kick and
> pull away from the officer.  Inmate was placed on the ground to
> regain control of the inmate.  The inmate was helped back to his feet.
> Once we began escorting the inmate to the medical department for
> assessment the inmate continued to curse and threaten the staff.

(Doc. 26-2, at 6.)  Plaintiff concedes that he was helped to his feet by Defendant Bixler and

Lieutenant Broe and then escorted to the medical department.  (Doc. 31, at 5.)  While in health

services, Plaintiff  complained of back pain and an injury assessment confirmed that he received a

contusion on his lower back.  (Doc. 26-2, at 11.)  Lieutenant Broe indicates that "[o]nce inside of

the medical department, the inmate continued to be verbally combative and it was determined that

it was unsafe to proceed with the medical assessment and the inmate was escorted to the special

housing unit without further incident."  (Doc. 26-2, at 6.)

Defendant Bixler states that "[m]y reaction to Watkin's thrashing and attempt to break away was not out of line.  I deny that I used force beyond what I needed to preserve order when Watkins attempted to break away from me during an escort.  Contrary to Watkin's allegations, I did not kick him while he was on the ground or at any time."  (Id. at 4, ¶ 7.)

## C.  Discussion

### 1.  Constitutional Claim

In their brief in support of the motion for summary judgment, Defendants raise the issue of qualified immunity.  The doctrine of qualified immunity provides that government officials performing "discretionary functions," are shielded from suit if their conduct did not violate a "clearly established statutory or constitutional right[ ] of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999); Saucier v. Katz, 533 U.S. 194, 200-01 (2001).  This doctrine provides not only a defense to liability, but immunity from suit.  Hunter v. Bryant, 502 U.S. 224, 227 (1991); Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

The Supreme Court has articulated a two-step test for determining whether a government official is entitled to qualified immunity.  Saucier, 533 U.S. at 200-01.  First, a court "must address whether 'the officer's conduct violated a constitutional right.'" Curley v. Klem, No. 05-4701, slip op. at 15 (3d Cir. Aug. 24, 2007); see also Saucier, 533 U.S. at 201 ("A court required to rule upon the qualified immunity issue must consider . . . this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?").

If the court finds a violation of a constitutional right, then it proceeds to the second step of

the analysis to assess "whether immunity should nevertheless shield the officer from liability."
Curley, slip op. at 16-17.  At this step, the court must consider whether the right that was violated
was clearly established, or, stated differently: "whether it would be clear to a reasonable officer that
his conduct was unlawful in the situation he confronted."  Curley, slip op. at 17 (quoting Saucier,
533 U.S. at 202.)

    With this framework in mind, the Court turns to Defendant Bixler's assertion that he is
entitled to qualified immunity, and initially addresses whether the conduct at issue violated
Plaintiff's constitutional rights.  See Gruenke v. Seip, 225 F.3d 290, 299-300 (3d Cir. 2000) (noting
that when immunity is raised at the summary judgment stage, the court's analysis of the merits of
the claims for purposes of summary judgment essentially merges with its analysis of the existence
of a deprivation of federal rights for purposes of immunity).  A court analyzes excessive force claims
under the Fourth Amendment's objective reasonableness standard.  Graham v. Connor, 490 U.S.
386, 394-95 (1988); see also Couden v. Duffy, 446 F.3d 483, 496-97 (3d Cir. 2006) (addressing the
factors that a court should consider as part of the reasonableness analysis).  It is clear from the record
that Plaintiff was subjected to the use of force by Defendant Bixler.  However, it is equally clear that
the force was applied in a good-faith effort to restore discipline, not maliciously and sadistically to
cause Plaintiff harm.  Moreover, all indications are that, in carrying out his task, Defendant Bixler
used a minimal amount of force which resulted in a minor injury.  In arriving at the conclusion that
Defendant Bixler's use of force was objectively reasonable, the Court has considered the need of the
application of force, the relationship between the need and the amount of force that was used, the
extent of injury inflicted, the threat to the safety of staff and inmates, as reasonably perceived by
Defendant Bixler and Lieutenant Broe, and their efforts to temper the severity of the force with

13

which they responded to the situation presented.   Thus, Plaintiff has failed to establish a constitutional violation and qualified immunity shields Defendant Bixler from suit.  Defendants are entitled to summary judgment on this claim.

      2.    FTCA

      The United States is immune from certain intentional torts committed by its agents.  For instance, the United States is not liable for claims arising out of assault and/or battery committed by federal employees within the scope of their employment unless the employee was an investigative or law enforcement officer.  See 28 U.S.C. § 2680(h).  In order to withstand summary judgment based on the intentional tort exclusion, a plaintiff must allege that the federal employee is an investigative or law enforcement officer. See Sheridan v. United States, 487 U.S. 392 (1988); see also Maurello v. United States, 111 F. Supp.2d 475, 481 n. 7 (D.N.J. 2000) (summary judgment granted under § 2860(h) on former inmate's false imprisonment FTCA claim because plaintiff did not sufficiently allege defendants were investigative or law enforcement officers).  Following a thorough review of the pleadings and the summary judgment documents submitted by Plaintiff, the Court concludes that Plaintiff has failed to allege that Bixler was an investigative or law enforcement officer.  This omission is fatal to his claim.  However, even if Plaintiff had sufficiently alleged that Bixler was an investigative or law enforcement officer,[2] Defendant contends that because Plaintiff's injury was not sustained during an arrest, search, or seizure, his FTCA claim is precluded by the

---

      [2]  The Defendant argues that a correctional officer in a federal prison is not an investigative or law enforcement officer.  However, the Supreme Court has included Bureau of Prisons officers in the definition of "investigative or law enforcement officer" in § 2680(h).  Carlson v. Green, 446 U.S. 14, 20 (1980).  It has also been recognized within this district that Bureau of Prisons staff members may be considered law enforcement officers. See Knight v. Kaminski, Civil No. 05-18; slip op. at 6 (M.D. Pa. March 10, 2006) (Conaboy, J.)  King v. United States, Civil No. 93-258, slip op. at 2 (M.D. Pa. July 27, 1993) (Kosik, J.); Zakaria v. Bureau of Prisons, Civil No. 95-1787, slip op. at 7-9 (M.D. Pa. April 29, 1998) (McClure, J.).

Third Circuit's interpretation of § 2680(h) in <u>Pooler v. United States</u>, 787 F.2d 868, 872 (3d Cir. 1986).  The Court agrees.  In <u>Pooler</u>, the Third Circuit addressed an FTCA claim regarding the conduct of a police officer employed by the Veterans Administration ("VA").  The <u>Pooler</u> court, in discussing the § 2680(h) waiver of sovereign immunity with regards to certain acts or omissions of law enforcement or investigative officers, noted that "[t]he statute defines an investigative or law enforcement officer as 'any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of federal law.'" <u>Id.</u>  The Third Circuit further noted that despite a generous reading of the complaint, there were no allegations that the VA official had "committed an intentional tort while executing a search, seizing evidence, or making an arrest."  <u>Id.</u>  Based on the underlying legislative history, it was concluded that the intentional tort exception should only apply to activities of officers "engaging in searches, seizures or arrests."  <u>Id.</u> The determination that the intentional tort exception of § 2680(h) is limited to specific kinds of law enforcement activity is binding precedent on this Court.

In the present case, the alleged conduct did not occur during the course of an arrest or in the context of a search.  As concerns seizure, the Third Circuit has clearly indicated that the seizure for purposes of § 2680(h) refers only to the seizure of evidence.  <u>See</u> <u>Pooler</u>, 787 F.3d at 872.  There are no facts contained in the record that could support a determination that the alleged conduct of March 9, 2005, occurred during a seizure of evidence as contemplated by <u>Pooler</u>.  Thus, because the purported conduct  did not take place during an arrest, search, or seizure of evidence, Plaintiff cannot obtain relief under the FTCA.  Defendants are entitled to entry of summary judgment in their favor on this claim.

An appropriate order follows.

15

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSEPH WATKINS,** | : | **CIVIL NO. 1:06-CV-1298** |
| **Plaintiff,** | : | |
| | : | **(Chief Judge Kane)** |
| **v.** | : | |
| | : | |
| **SENIOR OFFICER BIXLER,** | : | |
| **Defendant** | : | |

**ORDER**

    **AND NOW**, this  28th_  day of September 2007, **IT IS HEREBY ORDERED THAT**

Defendants' motion to dismiss and for summary judgment (Doc. No. 21) is **GRANTED IN PART**

and **DENIED IN PART** as follows:

    1.    Plaintiff's Eighth Amendment medical claim and all claims lodged against Defendant Bixler in his official capacity are **DISMISSED**.  In all other respects, the request for dismissal pursuant to Rule 12(b)(6) is **DENIED**.

    2.    Summary judgment is **GRANTED** in favor of Defendants on Plaintiff's the Eighth Amendment excessive force claim and the FTCA claim.  The Clerk of Court is directed to **ENTER** judgment in favor of Defendants and against Plaintiff on these claims.

    3.    The Clerk of Court is further directed to **CLOSE** the case file.

    4.    Any appeal from this order is **DEEMED** frivolous and not in good faith.  <u>See</u> 28 U.S.C. § 1915(a)(3).

           ____s/ Yvette Kane_____
           Yvette Kane, Chief Judge
           United States District Court
           Middle District of Pennsylvania